UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                :
WILLIE THOMAS SIMMS,             :
                                :   Civil Action No. 12-5012 (RMB)
          Petitioner,            :
                                :
     v.                          :   **MEMORANDUM OPINION AND ORDER**
                                :
J.T. SHARTLE,                    :
                                :
          Respondent.            :
_____:

   This matter comes before this Court upon Petitioner's payment of the applicable filing fee of $5.00, which: (a) was preceded by his submission of a Section 2241 habeas petition ("Petition"), see Docket Entry No. 1; and (b) was followed by Petitioner's filing of his amended Section 2241 petition ("Supplement") and, shortly thereafter, a letter operating as an additional supplement ("Letter"), see Docket Entries Nos. 4 and 5, and it appearing that:

1.  Since the Petition arrived unaccompanied by Petitioner's filing fee or his in forma pauperis application, this Court denied Petitioner in forma pauperis status and directed Petitioner to cure that deficiency of his application. See Docket Entry No. 3. Petitioner duly complied by paying the applicable $5.00 filing fee. See Docket Entry dated August 17, 2012.

2. The Petition, a 140-page submission, see Docket Entries Nos. 1, 1-1 and 2, asserts a panoply of challenges. See, generally, id. The best this Court can gather from that initial voluminous submission, it appears that Petitioner – being a federal prisoner serving his term at the F.C.I. Fairton, Fairton, New Jersey – had been, at some point in time, admitted to the Bureau of Prisons ("BOP") Substance Abuse Treatment Program administered at the F.C.I. Fairton, which program is commonly referred to as "Residential Drug Abuse Program" ("RDAP"), but – as a result of a certain development, which might or might not have been a result of Petitioner's commission of a certain infraction or the prison officials' concerns about Petitioner's mental health – Petitioner was evaluated by medical mental health professionals and, being found unsuitable for RDAP, was expelled from that program prior to his completion of it. See, generally, Docket Entry No. 1.

3. In addition, the Court surmises from the content of the Petition that Petitioner's alleged efforts to exhaust his challenges administratively is nowhere recorded in the BOP system, be it in terms of Petitioner's filings or BOP's review/denial of his challenges.

4. Notably, Petitioner's challenges to his removal from RDAP are coupled with several conditions-of-confinement-type

claims asserting denial of access to the courts, retaliation, violation of his First Amendment rights, and violation of his Equal Protection rights.

5. Petitioner's Supplement, styled as an "amended petition," arrived after Petitioner's filing of his filing fee, alleges the same or similar claims (i.e., retaliation, tampering with legal mail, etc.). See Docket Entry No. 4. Petitioner's latest submission, a letter inquiring about the status of this case, further elaborated on the same civil rights challenges, re-asserting undue tampering with Petitioner's legal mail.  See Docket Entry No. 5.

6. "Habeas corpus petitions must meet heightened pleading requirements," McFarland v. Scott, 512 U.S. 849, 856 666 (1994), because Habeas Rule 2(c) requires a petition to "state the facts supporting each ground" and "state the relief requested."  28 U.S.C. § 2254 Rule 2(c), applicable to § 2241 through Rule 1(b).  Importantly, pro se litigants are: (a) not expected to make legal arguments (especially if such arguments strive to teach the courts law) because Habeas Rule 2(c) merely requires a petition to "specify all the grounds for relief," id.; and (b) not allowed to submit voluminous filings asserting multitudes of claims "conflated into numerous Hydra-like umbrella challenges."  Samha v. Lagana, Civil Action No. 11-4943 (SRC) (DNJ), Docket Entry

3

    No. 2, at 1 (quoting <u>Murakush Caliphate of Amexem Inc. v. New Jersey</u>, 2011 U.S. Dist. LEXIS 51887, at *69 (D.N.J. May 13, 2011)  Therefore, Petitioner's original 140-page Petition, being unduly voluminous, violates the requirements of Rule 2(d).  His supplement, too, fails to meet the pleading obligations under Rule 2(c).

7.    In addition, to the extent Petitioner wishes to assert claims alleging retaliation, denial of access to the courts, tampering with legal mail, violation of his Equal Protection rights, etc., *none* of these challenges can be litigated in the habeas proceedings at bar.  Federal law provides two avenues of relief to prisoners: a petition for habeas corpus and a civil rights complaint.  <u>See</u> <u>Muhammad v. Close</u>, 540 U.S. 749, 750 (2004).  "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . . [while] requests for relief turning on circumstances of confinement [fall within the realm of] a § 1983 action."[1]  <u>Id.</u>  The Court of Appeals for the Third Circuit explained the distinction between the availability of civil rights relief and the availability of habeas relief as follows:

---

[1] In a series of cases beginning with <u>Preiser v. Rodriquez</u>, 411 U.S. 475 (1973), the Supreme Court analyzed the intersection of civil rights and <u>habeas</u> <u>corpus</u>.

> [W]henever the challenge ultimately attacks the "core of habeas" - the validity of the continued conviction or the fact or length of the sentence - a challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition. Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate.

Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002). Therefore, a prisoner is entitled to a writ of habeas corpus only if he "seek[s] to invalidate the duration of [his] confinement - either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the [government's] custody." See Wilkinson v. Dotson, 544 U.S. 74, 81 (2005). In contrast, if a judgment in the prisoner's favor would not affect the fact or duration of the prisoner's incarceration, habeas relief is unavailable and a civil complaint is the appropriate form of remedy. See, e.g., Ganim v. Federal Bureau of Prisons, 235 F. App'x 882 (3rd Cir. 2007) (holding that district court lacks jurisdiction under § 2241 to entertain prisoner's challenge to his transfer between federal prisons); Bronson v. Demming, 56 F. App'x 551, 553-54 (3rd Cir. 2002) (habeas relief was unavailable to inmate seeking release from disciplinary segregation to general population).

Correspondingly, because Petitioner's successful completion of the Fairton RDAP could allow Petitioner a speedier release (by reducing his term of imprisonment), that – but only that – aspect of Petitioner's challenges can be litigated in the instant habeas matter.  All other Petitioner's claims, be they based on his allegations about retaliation or violation of his Equal Protection rights, or if they assert denial of access to the courts, or tampering with his legal mail, etc., should be raised by means of a new and separate action commenced by Petitioner's filing of a civil complaint accompanied by Petitioner's $350 filing fee or his duly executed in forma pauperis application.[2] All Petitioner's pleadings in *this* matter, including Petitioner's re-amended petition, which Petitioner will be allowed to file, had to be and – in the future – should be limited solely to clear and concise statements of the facts related to Petitioner's expulsion from the Fairton RDAP.[3]

---

[2]  No statement made in this Memorandum Opinion and Order shall be construed as expressing this Court's opinion as to substantive or procedural validity or invalidity of such civil challenges, if raised.

[3]  At this juncture, it appears that Petitioner's habeas challenges might have been striving to assert that the BOP unreasonably applied Program Statement ("P.S.") 5330.11 to Petitioner by expelling Petitioner from the Fairton RDAP on the basis of Petitioner's certain actions/statements.  Yet, none of Petitioner's submissions appears to dispute that Petitioner actually committed the actions and/or made the statements which,

8. Finally, this Court, taking notice of Petitioner's statements (seemingly suggesting Petitioner's position that his grievance filed with the BOP Central Office is contained nowhere in the BOP's records) finds it warranted to clarify to Petitioner the following:

   a. The BOP Administrative Remedy Program is a three-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. An inmate must initially attempt to informally resolve the issue with institutional staff. See 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted. See 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response

---

under the BOP findings, led to his expulsion. Hence, Petitioner's sole habeas claim, stripped from the civil rights assertions, seems to allege unreasonableness of BOP's application of P.S. 5330.11 to Petitioner's actions/statements. However, granted the sheer volume and patchiness of Petitioner's submissions, the Court cannot determine the exact nature of Petitioner's challenges. Petitioner, therefore, shall focus on clarifying the same in his re-amended pleading.

        to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the BP-8 response. <u>See</u> 28 C.F.R. § 542.15(a). The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the BP-9 response. <u>See</u> <u>id.</u> Appeal to the General Counsel is the final administrative appeal. <u>See</u> <u>id.</u> If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

b.    The above-detailed administrative exhaustion requirement applies to all inmates' challenges to administrative determinations. <u>See</u> <u>Spruill v. Gillis</u>, 372 F.3d 218 (3d Cir. 2004); <u>Booth v. Churner</u>, 206 F.3d 289 (3d Cir. 2000). While this exhaustion requirement is not a jurisdictional bar to litigation, the requirement is strictly enforced by the courts. This rigorous enforcement is mandated by a fundamental recognition that exhaustion requirement of § 1997e promotes important public policies. As the Court of Appeals noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements.  They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a) . . . .  [A] comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court."  Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards.  And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim . . . .  In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency . . . . Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto . . . .  In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained.  The administrative process can serve

> to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000) (citations omitted).

c. Correspondingly, courts impose a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. See Spruill, 372 F.3d 218. The courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 Fed. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 Fed. App'x 178 (3d Cir .2006). Therefore, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with the statutory exhaustion requirement. See Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an inmate

avoid this exhaustion requirement by merely alleging that the BOP's policies were not clearly explained to him. See Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Furthermore, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. See Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003). In addition, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that (s)he did not pursue a proper grievance once those impediments were removed. See Oliver v. Moore, 145 Fed. App'x 731 (3d Cir. 2005) (failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).[4]

---

[4] This broad rule, however, admits of one exception, albeit a very narrow one. If the actions of prison officials in some fashion contributed to inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, courts have recognized a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis, 49 F. App'x at 368. Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," and an inmate can defeat a claim of failure to exhaust only by showing "he was misled [by the prison officials as to his obligation to exhaust] or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Harris, 149 F. App'x at 59; Davis, 49 F. App'x at 368.

    d.    Here, the content of the Petition merely hints that he filed "some" grievances with "some" BOP officials challenging "some" developments. If, on the basis of Petitioner's exhibits, this Court were to hypothesize that Petitioner's discussion of his exhaustion was intended to relate to his removal from the Fairton RDAP, it appears that Petitioner failed to meet the exhaustion requirement since he merely claims that a certain grievance was not docketed in the BOP electronic system, but offers not a shred of proof that he was subjected to extraordinary circumstances preventing exhaustion by, e.g., simple re-filing upon finding that his grievance was lost/not mailed/not received by the addressee. However, out of an abundance of caution, the Court will allow Petitioner an opportunity to detail the facts of his exhaustion efforts.

IT IS, therefore, on this <u>27th</u> day of <u>September 2012</u>,

ORDERED that the Clerk shall reopen this matter by making a new and separate entry on the docket reading, "CIVIL CASE REOPENED"; and it is further

ORDERED that Petitioner's applications docketed as Docket Entries Nos. 1, 2, 4 and 5 and dismissed; and it is further

ORDERED that Petitioner's civil rights challenges are dismissed for lack of jurisdiction. Such dismissal is conclusive for the purposes of the proceedings at bar. Such dismissal, however, is without prejudice to Petitioner's raising these challenges by means of a civil complaint submitted in a new and separate civil matter duly commenced by Petitioner; and it is further

ORDERED that Petitioner's challenges to his expulsion from the Fairton RDAP are dismissed for failure to comply with the requirements posed by Habeas Rule 2. Such dismissal is without prejudice to Petitioner's filing of a re-amended petition,[5] stating, *clearly and concisely, and without undue discussions of law*, the facts of Petitioner's expulsion-from-the-Fairton-RDAP challenges (and the nature of his challenges, i.e., whether his challenges are based on his position that the BOP unreasonably/frivolously applied P.S. 5330.11 to Petitioner's acts and statements, or whether Petitioner's claims ensue from a different legal position) and, in addition, the facts of

---

[5] Such re-amended petition shall not exceed ten pages, single-sided, double-spaced. Petitioner may, if he so desires, add exhibits to his re-amended submission, provided that such exhibits are relevant. Petitioner shall *not* resubmit the exhibits already submitted. In the event Petitioner wishes to make references to his already-submitted exhibits, he shall designate them by the docket number and page number. To accommodate Petitioner's endeavors to that effect, the Clerk will be directed to serve Petitioner with a copy of his original 140-page Petition, Docket Entries Nos. 1 and 1-1.

Petitioner's administrative exhaustion of these particular challenges with all three levels of the BOP, including the Central Office;[6] and it is further

ORDERED that the Clerk shall administratively terminate this matter, subject to reopening in the event Petitioner submits, within sixty days from the date of entry of this Memorandum Opinion and Order, his re-amended petition executed in accordance with the guidance provided to him herein;[7] and it is further

ORDERED that administrative termination is not a dismissal on the merits, and no statement in this Memorandum Opinion and

---

[6] The Court was able to locate, among Petitioner's exhibits, a response from Petitioner's warden suggesting that Petitioner was expelled from the Fairton RDAP for disruptive behavior, unsatisfactory progress and violations of confidentiality requirements inherent to the RDAP; the Court was also able to locate a response from the BOP Regional Office (making statements to the same effect). See Docket Entry No. 1-1, at 36-37. Therefore, the Court presumes – without making a factual finding to that effect – that Petitioner's exhaustion-of-administrative-remedies dispute is limited solely to Petitioner's filing made with the BOP Central Office.

[7] The Court allows Petitioner extra time to execute his re-amended petition. The Court stresses that the legal system neither allows nor rewards "everything-but-the-kitchen-sink" submissions striving to confuse the judiciary and/or the litigant's adversaries, see Tilbury v. Aames Home Loan, 199 F. Appx. 122, 124 (3d Cir. N.J. 2006) (stressing that "everything but the kitchen sink" applications are neither allowed nor rewarded by victories), and another submission of such document by Petitioner might be construed as indicative of his litigation in bad faith, and sanctions might be applied to Petitioner, if appropriate.

Order shall be construed as withdrawal of the Court's jurisdiction over this matter; and it is further

ORDERED that the Clerk shall serve a copy of this Memorandum Opinion and Order upon Petitioner by regular mail. The Clerk shall include in said mailing a copy of Petitioner's original 140-page Petition (docketed in this matter as two docket entries, i.e., Docket Entries Nos. 1 and 1-1); and it is finally

ORDERED that the Clerk shall enter a new and separate entry on the docket reading "CIVIL CASE TERMINATED."

s/Renée Marie Bumb<br>
RENEE MARIE BUMB<br>
United States District Judge